**HUESTON HENNIGAN LLP**
Alison L. Plessman, State Bar No. 250631
aplessman@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:    (213) 788-4340
Facsimile:    (888) 866-4825

Attorneys for Plaintiff
CA, Inc. d/b/a CA Technologies (a Broadcom Company)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CA, INC. d/b/a CA TECHNOLOGIES (A BROADCOM COMPANY), | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | **Jury Trial Demanded** |
| ALLSTATE INSURANCE COMPANY. and STANCORP FINANCIAL GROUP, INC. | |
| Defendants. | |

COMPLAINT

6914184

**COMPLAINT**

Plaintiff CA, Inc. ("CA") brings this action to address willful acts of copyright infringement and breaches of contract that have damaged CA and generated substantial profits for Defendants Allstate Insurance Company ("Allstate") and StanCorp Financial Group, Inc. ("StanCorp") (together, "Defendants"). CA alleges as follows:

**NATURE OF THE ACTION**

1.     This is a civil action for copyright infringement, vicarious copyright infringement, and contributory copyright infringement under the laws of the United States, 17 U.S.C. §§ 1, *et seq.*, breach of contract, and for declaratory jugdment.

2.     Defendants have infringed CA's copyrighted software listed on Schedule A.

3.     A true and correct copy of CA's copyright registration is attached as Exhibit A.

**PARTIES**

4.     Plaintiff CA is a Delaware corporation with its principal place of business in Palo Alto, California.

5.     On information and belief, Defendant Allstate is an Illinois corporation with its principal place of business in Northbrook, Illinois.

6.     On information and belief, Defendant StanCorp is an Oregon corporation with its principal place of business in Oregon.

**JURISDICTION AND VENUE**

7.     The acts in dispute in this case violate CA's exclusive rights under the Copyright Act, 17 U.S.C. § 101 et. seq.

8.     This Court has subject matter jurisdiction over the copyright causes of action pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the federal Copyright Act. *See* 17 U.S.C. § 101, *et seq*. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

/ / /

- 2 -
COMPLAINT

9. Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400 because Defendants are subject to personal jurisdiction here.

10. This Court has personal jurisdiction over Allstate because the relevant transaction agreement was negotiated in this forum, the software at issue is owned in and controlled from this forum, and the harm resulting from Defendants' conduct was suffered in this forum. Allstate has purposefully availed itself of the privilege of conducting activities in this forum by licensing software from Plaintiff (a California citizen), entering into agreements with Plaintiff, and causing foreseeable harm to Plaintiff in this forum. Allstate knew, or reasonably should have known, that CA: (a) is located in California, and that Allstate directed and aimed its unauthorized activities at CA, which is located in the Northern District of California; and (b) would likely suffer the brunt of the harm caused by Allstate in California at CA's principal place of business in Palo Alto, California within this District. Allstate also directed its correspondence regarding the divestiture at issue to Plaintiff in California. As a result, Allstate could reasonably anticipate being haled into court here.

11. This Court has personal jurisdiction over StanCorp because it has purposefully availed itself of the privilege of conducting activities in this forum by using copyrighted software owned by Plaintiff (a California citizen) without authorization, inducing and causing such unauthorized use on the part of Allstate, and causing foreseeable harm to Plaintiff in this forum. StanCorp knew, or reasonably should have known, that CA: (a) is located in California, and that StanCorp directed and aimed its unauthorized activities at CA, which is located in the Northern District of California; and (b) would likely suffer the brunt of the harm caused by StanCorp in California at CA's principal place of business in Palo Alto, California within this District. As a result, StanCorp could reasonably anticipate being haled into court here.

12. The exercise of jurisdiction is reasonable and does not violate fair play or substantial justice. Allstate and StanCorp are residents of different states and both infringed copyrighted software owned by Plaintiff in California, knowing it would cause harm to Plaintiff in California.

**GENERAL ALLEGATIONS**

13. This is an action for copyright infringement, contributory copyright infringement, vicarious copyright infringement, breach of contract, and declaratory judgment brought by CA

6914184

against Defendants arising from Allstate's unauthorized reproduction and distribution of CA's copyrighted software.

14.    CA creates and markets software solutions that enable its customers to plan, develop, manage, and secure applications and enterprise environments across different platforms.

15.    Because it relies on its portfolio of products to distinguish it from its competitors, CA's products and technology are protected under patent, copyright, and trademark laws where available.

16.    CA also includes confidentiality clauses in its licensing agreements.

17.    CA monetizes its products and technology through, among other things, product licensing, support, and maintenance.  To protect its ability to monetize and market its products and technology, CA limits the permissible use of the products licensed under each licensing agreement.

18.    In general, workload automation tools are software solutions designed to manage, schedule, and execute a series of tasks and processes within IT environments, often without human intervention. They help streamline operations by automating complex workflows across various applications and systems. The copyrighted software listed on Schedule A—ESP Workload Automation 12.0— simplifies cross-enterprise workload automation with the provision of an enterprise-grade workload scheduler that is hosted on the z/OS platform. ESP features a single point of control to define, monitor, and manage scheduled and event-based workload. The software reduces the cost and complexity of managing mission-critical workloads by using distributed agents to manage database, SAP, Hadoop, web services, and other workloads across all enterprise applications and platforms.

19.    Through Order Form #00333778.0 dated November 20, 2021 (with attached exhibits, the "2021 Order Form"), CA agreed to license its software to Allstate, including but not limited to ESP Workload Automation 12.0. The 2021 Order Form provides that Allstate's use of CA's software and services is governed by the 2021 Order Form and the CA Software License Agreement dated August 1, 1994, #396687, as amended May 1, 1995 ("CA Master Agreement"). ESP Workload Automation 12.0 is governed by the 2021 Order Form and CA Master Agreement.

20.    The 2021 Order Form also provides that the Symantec-branded CA software listed on

- 4 -
COMPLAINT

6914184

the 2021 Order Form is governed by the Master Software License Agreement, dated September 28, 2001, as amended, between Allstate and CA, Inc., successor in interest to Symantec Corporation for the Symantec Enterprise products ("Symantec Master Agreement").

21.     The 2021 Order Form also provides that the SaaS Services listed on the 2021 Order Form are governed by the Master Purchase Agreement For Online Services, dated effective December 21, 2018, as amended between Allstate and CA, Inc., successor in interest to Symantec Corporation for the Symantec Enterprise products ("Saas Master Purchase Agreement").

22.     The 2021 Order Form, CA Master Agreement, Symantec Master Agreement, and Saas Master Purchase Agreement are collectively referred to herein as the "Agreements."

23.     On February 25, 2025, Allstate sent a letter to Symantec (a company no longer in existence) notifying Symantec of Allstate's planned divestiture of its Employer Voluntary Benefits ("EVB") business to StanCorp. As the 2021 Order Form states, CA is the successor in interest to Symantec for the Symantec enterprise offerings. Nevertheless, on information and belief, Allstate did not send a similar notice letter addressed to CA.

24.     In the February 25 notice letter to Symantec and subsequent correspondence with CA, Allstate expressed its intent to use certain products and services listed in the 2021 Order Form and licensed by Allstate under the Agreements (the "Divestiture Offerings"), including but not limited to ESP Workload Automation 12.0, in connection with transitioning the EVB business to StanCorp, for a period of up to two (2) years following the planned sale.

25.     On March 7, 2025, CA communicated to Allstate that it did not have the rights necessary under the Agreements to do so. Specifically, CA informed Allstate that it has no rights under the Agreements to: (i) allow use of the Divestiture Offerings by a divested entity; or (ii) use the Divestiture Offerings on behalf of a divested entity; or (iii) allow or perform processing activities by, or on behalf of, the divested entity for the Divestiture Offerings ("Divesture Use"). Following this communication, CA and Allstate opened initial discussions that would be necessary to explore whether and how such rights might be granted. Knowing it did not have the required divestiture rights, Allstate asked for a financial proposal for five CA and Symantec-branded software products listed in the 2021 Order Form, including CA's ESP Workload Automation 12.0.

26.    It thus came as quite a surprise to CA when it learned that the stated divestiture had closed on or around April 1, 2025, without Allstate first securing the rights necessary to engage in Divestiture Use. As such, use of the Divestiture Offerings for these purposes violates the Agreements and infringes CA's intellectual property rights. This was also willful and intentional conduct. Indeed, the prior discussions between CA and Allstate demonstrate that Allstate knew it had no rights for Divestiture Use and opened discussions to secure those rights. It then proceeded with the divestiture and Divestiture Use without securing those rights.

27.    On April 10, 2025, CA sent a cease and desist letter to Allstate and StanCorp demanding that (i) Allstate immediately cease and desist all Divesture Use of all Divestiture Offerings for, or on behalf of, StanCorp; and (ii) StanCorp no longer receive services or otherwise benefit from such Divestiture Use of the Divestiture Offerings. CA further demanded that Allstate and StanCorp confirm in writing within three business days that all such Divestiture Use had ceased. Neither Allstate nor StanCorp provided that confirmation.

28.    On April 29, 2025, outside counsel for CA sent another letter to Allstate and StanCorp reiterating that any Divestiture Use was unauthorized and demanding confirmation within 48 hours that no Divestiture Offerings had been used for the benefit of StanCorp after the transaction closed. To date, no such confirmation has been provided by either Defendant. Allstate provided only a vague response that it is acting "in accordance with its rights and obligations under the relevant contracts" without further confirmation that all Divestiture Use had ceased.

29.    CA now brings this action to vindicate its rights under the Copyright Act and the applicable Agreements.

30.    Upon information and belief, Defendants continue to willfully infringe CA's copyrights.

### COUNT 1
**Direct Copyright Infringement**
**(Against Allstate)**

31.    CA realleges and incorporates by reference the foregoing allegations in this Complaint.

- 6 -
COMPLAINT

6914184

32. CA is the registered owner of the valid and exclusive copyright listed in Schedule A attached to this Complaint.

33. At all relevant times, the copyrighted software listed in Schedule A—ESP Workload Automation 12.0—constituted confidential business and proprietary information belonging to CA.

34. The copyrighted software listed on Schedule A was licensed to Allstate under the 2021 Order Form and the CA Master Agreement. The license granted to Allstate under the 2021 Order Form and the CA Master Agreement was limited to Allstate's internal operations only. The 2021 Order Form and CA Master Agreement contain no divestiture rights.

35. On April 1, 2025, Allstate divested its EVB business to StanCorp. Allstate notified CA that it intended to use the copyrighted software in Schedule A, among other software and services, for the benefit of the divested entities for a period of two years. As described above, CA informed Allstate that such use was not authorized by the Agreements.

36. On information and belief, Allstate, without authorization, has distributed and reproduced CA's copyrighted software, and will continue reproducing CA's copyrighted software, outside the scope of its license agreement as a result of its divestiture of the EVB business to StanCorp. The license granted to Allstate under the 2021 Order Form and the CA Master Agreement does not cover Divestiture Use.

37. The unauthorized acts of Allstate constitute copyright infringement.

38. As a result of the foregoing activities, Allstate is liable to CA for copyright infringement under 17 U.S.C. § 501. CA has suffered and will continue to suffer losses that will be ascertained according to proof. Under 17 U.S.C. § 504(b), CA is entitled to recover its actual damages and any profits of Defendants that are attributable to the infringement. In the alternative, CA is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

39. CA is also entitled to injunctive relief prohibiting Allstate's continued infringement pursuant to 17 U.S.C. § 502. CA has no adequate remedy at law for Allstate's wrongful conduct because (a) CA's copyrights are unique and valuable property, and (b) Allstate's wrongful conduct and the resulting damage to CA are continuing.

/ / /

6914184

40.     On information and belief, Allstate's conduct has been willful within the meaning of the Copyright Act. At a minimum, on information and belief, Allstate has acted with willful blindness to, and in reckless disregard of, CA's registered copyrights.

41.     CA also requests recovery of its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT II
### Contributory Copyright Infringement
### (Against StanCorp)

42.     CA realleges and incorporates by reference all foregoing allegations in this Complaint.

43.     On April 1, 2025, Allstate divested its EVB business to StanCorp.

44.     As set forth above, on information and belief, Allstate, without authorization, has distributed and reproduced CA's copyrighted software, and will continue reproducing CA's copyrighted software, outside the scope of its license agreement as a result of its divestiture of the EVB business to StanCorp. The license granted to Allstate under the 2021 Order Form and the CA Master Agreement does not cover Divestiture Use.

45.     The unauthorized acts of Allstate constitute copyright infringement.

46.     StanCorp knew or had reason to know that Allstate's unauthorized acts constituted copyright infringement.

47.     StanCorp has induced, caused, and/or materially contributed to Allstate's copyright infringement.

48.     As a direct and proximate result of StanCorp's conduct, CA has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law.

49.     As a direct and proximate result of the contributory infringement by StanCorp set forth herein, CA is entitled to actual damages and Defendants' profits attributable to its infringement.

50.     Alternatively, CA is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), and such other amounts as may be proper under 17 U.S.C. § 504(c).

51.     On information and belief, StanCorp's conduct has been willful within the meaning of the Copyright Act. At a minimum, on information and belief, StanCorp has acted with willful

- 8 -
COMPLAINT

6914184

blindness to, and in reckless disregard of, CA's registered copyrights.

52. CA also requests recovery of its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

**COUNT III**
**Vicarious Copyright Infringement**
**(Against StanCorp)**

53. CA realleges and incorporates by reference all foregoing allegations in this Complaint.

54. On April 1, 2025, Allstate divested its EVB business to StanCorp.

55. As set forth above, on information and belief, Allstate, without authorization, has distributed and reproduced CA's copyrighted software, and will continue reproducing CA's copyrighted software, outside the scope of its license agreement as a result of its divestiture of the EVB business to StanCorp. The license granted to Allstate under the 2021 Order Form and the CA Master Agreement does not cover Divestiture Use.

56. The unauthorized acts of Allstate constitute copyright infringement.

57. On information and belief, StanCorp now owns and controls the EVB business for which the copyrighted software is being used. StanCorp has the right and ability to supervise, control, or stop the infringing activity of Allstate, and derives a direct financial benefit from that infringement.

58. As a direct and proximate result of StanCorp's conduct, CA has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law.

59. As a direct and proximate result of the vicarious infringement by StanCorp set forth herein, CA is entitled to actual damages and Defendants' profits attributable to its infringement.

60. Alternatively, CA is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), and such other amounts as may be proper under 17 U.S.C. § 504(c).

61. On information and belief, StanCorp's conduct has been willful within the meaning of the Copyright Act. At a minimum, on information and belief, StanCorp has acted with willful blindness to, and in reckless disregard of, CA's registered copyrights.

62. CA also requests recovery of its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

- 9 -
COMPLAINT

6914184

## COUNT IV
### Breach of Contract
### (Against Allstate)

63.    CA realleges and incorporates by reference all foregoing allegations of its Complaint as if fully set forth herein.

64.    Through the 2021 Order Form, CA agreed to license its software to Allstate, including but not limited to ESP Workload Automation 12.0. The 2021 Order Form provides that Allstate's use of CA's software and services is governed by the 2021 Order Form and the CA Master Agreement.

65.    The 2021 Order Form also provides that the Symantec-branded CA software listed in the 2021 Order Form is governed by the Symantec Master Agreement.

66.    The 2021 Order Form also provides that the SaaS Services listed in the 2021 Order Form are governed by the Saas Master Purchase Agreement.

67.    On February 25, 2025, Allstate sent a letter to Symantec (a company no longer in existence) notifying Symantec of Allstate's planned divestiture of its EVB business to StanCorp. As the 2021 Order Form states, CA is the successor in interest to Symantec for the Symantec enterprise offerings. Nevertheless, on information and belief, Allstate did not send a similar notice letter addressed to CA.

68.    In the February 25 notice letter to Symantec and subsequent correspondence with CA, Allstate expressed its intent to use the Divestiture Offerings in connection with transitioning the EVB business to StanCorp, for a period up to two years following the divestiture.

69.    CA informed Allstate that such Divestiture Use was not permitted by the Agreements.

70.    On information and belief, Allstate has engaged in such Divestiture Use in violation of the Agreements.

71.    Allstate's licenses to use the Divesture Offerings governed by the CA Master Agreement and Symantec Master Agreement are restricted to the internal operations of Allstate only. Allstate's licenses to use the Divestiture Offerings governed by the Saas Master Purchase Agreement are limited to certain authorized users, none of which include StanCorp.

72.    Moreover, the Agreements require Allstate to keep CA's software strictly confidential

- 10 -
COMPLAINT

6914184

and not to distribute or disclose it to third parties.

73.    Section 15 of the CA Master Agreement requires Allstate to keep CA's software strictly confidential and not to distribute or disclose the software to anyone other than Allstate's authorized employees.  The CA Master Agreement contains no divestiture rights.

74.    Section 16 of the Symantec Master Agreement similarly prohibits Allstate from disclosing CA's (formerly Symantec's) confidential and proprietary software to third parties. Section 16 states, "In recognition of its obligation of confidentiality, Allstate further agrees not to disclose the Software System or any other proprietary information of Licensor in any form, whether written or verbal, to any person other than Licensor, or Allstate's employees having a need to obtain access to the Software System consistent with Allstate's rights hereunder, without the prior written consent of Licensor." The Symantec Master Agreement contains no divestiture rights.

75.    Section 7 of the Saas Master Purchase Agreement contains similar confidentiality restrictions.  While the Saas Master Purchase Agreement includes limited divestiture rights for up to six months, it does not permit the Divestiture Use intended by Allstate for a period of two years.

76.    CA has fully performed its obligations under the Agreements.

77.    Allstate has breached the Agreements by using the Divestiture Offerings for use other than for its internal business operations and/or authorized users. Specifically, Allstate has used the Divestiture Offerings for the benefit of its divested EVB business.

78.    On information and belief, Allstate also has breached the Agreements by disclosing CA's confidential and proprietary information to StanCorp.

79.    As a direct and proximate result of Allstate's breach, CA has suffered damages, in an amount to be proven at trial but believed to be in excess of $80,000,000.

**COUNT V**
**Declaratory Judgment**
**28 U.S.C. § 2201**
**(Against Allstate)**

80.    CA realleges and incorporates by reference all foregoing allegations of its Complaint as if fully set forth herein.

81.    An actual, present, and justiciable controversy exists between CA and Allstate

- 11 -
COMPLAINT

6914184

concerning the proper interpretation of the Agreements.

82. Through the 2021 Order Form, CA agreed to license its software to Allstate, including but not limited to ESP Workload Automation 12.0. The 2021 Order Form provides that Allstate's use of CA's software and services is governed by the 2021 Order Form and the CA Master Agreement.

83. The 2021 Order Form also provides that the Symantec-branded CA software listed in the 2021 Order Form is governed by the Symantec Master Agreement.

84. The 2021 Order Form also provides that the SaaS Services listed in the 2021 Order Form are governed by the Saas Master Purchase Agreement.

85. On February 25, 2025, Allstate sent a letter to Symantec (a company no longer in existence) notifying Symantec of Allstate's planned divestiture of its EVB business to StanCorp. In that February 25 notice letter to Symantec and subsequent correspondence with CA, Allstate expressed its intent to use certain Divestiture Offerings in connection with transitioning the EVB business to StanCorp, for a period up to two years following the divestiture.

86. CA informed Allstate that such Divestiture Use was not permitted by the Agreements.

87. On information and belief, Allstate has engaged in such Divestiture Use in violation of the Agreements. On May 1, 2025, Allstate sent a letter to CA's outside counsel claiming it disagrees with CA's characterization of the applicable agreements and the underlying facts. Allstate further claimed that it "has acted – and continues to act – in accordance with its rights and obligations under the relevant contracts."

88. The parties' dispute over the meaning of the Agreements has created substantial uncertainty and threatens to impair CA's rights.

89. CA seeks a declaratory judgment under 28 U.S.C. § 2201 that the Agreements should be interpreted consistent with CA's interpretation, and that Allstate's contrary interpretation is without merit.

90. Specifically, CA seeks a declaratory judgment that Allstate's licenses to use the Divesture Offerings governed by the CA Master Agreement and Symantec Master Agreement are restricted to the internal operations of Allstate only. CA also seeks a declaratory judgment that

- 12 -

COMPLAINT

6914184

Allstate's licenses to use the Divestiture Offerings governed by the Saas Master Purchase Agreement are limited to certain authorized users, none of which include StanCorp.

91.    CA also seeks a declaratory judgment that the CA Master Agreement and Symantec Master Agreement contain no divesture rights and do not permit any Divestiture Use.

92.    CA also seeks a declaratory judgment that while the Saas Master Purchase Agreement includes limited divestiture rights for up to six months, it does not permit the Divestiture Use intended by Allstate for a period of two years.

93.    Declaratory relief is necessary and appropriate to resolve this dispute, provide certainty to the parties, and avoid further harm to CA.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CA demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

CA requests the following relief:

1.    An injunction requiring Defendants to cease its unauthorized use, reproduction, and distribution of CA's software listed in Schedule A;

2.    Compensatory damages to be proven at trial;

3.    Actual damages and Defendants' profits attributable to the infringement under 17 U.S.C. § 504(b) or, in the alternative, statutory damages under 17 U.S.C. § 504(c);

4.    Costs and reasonable attorney's fees under 17 U.S.C. § 505;

5.    Declaratory judgement that the Agreements are properly interpreted consistent with CA's position as set forth above;

6.    Judgment in favor of CA and against Defendants; and

7.    All other relief, legal or injunctive, as the Court finds appropriate.

6914184

Dated: May 2, 2025                              HUESTON HENNIGAN LLP

By: _____
                                                Alison L. Plessman

                                                *Attorneys for Plaintiff*
                                                *CA, Inc. d/b/a CA Technologies*

- 14 -
COMPLAINT

6914184

## SCHEDULE A

| CA Software | Registration Number |
|---|---|
| ESP Workload Automation 12.0 | TX 9-472-622 |

COMPLAINT

6914184

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-472-622**

**Effective Date of Registration:**
February 03, 2025
**Registration Decision Date:**
February 26, 2025

## Title

**Title of Work:** ESP Workload Automation 12.0

## Completion/Publication

**Year of Completion:** 2020
**Date of 1st Publication:** June 30, 2020
**Nation of 1st Publication:** United States

## Author

- **Author:** CA, Inc.
**Author Created:** computer program
**Work made for hire:** Yes
**Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** CA, Inc.
3421 Hillview Ave, Palo Alto, CA, 94304-1320, United States

## Limitation of copyright claim

**Material excluded from this claim:** computer program, Code from previous versions of CA ESP Workload Automation/Manager/Cybermation and open source software.

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** CA, Inc.
**Email:** copyright.notice@broadcom.com
**Address:** 3421 Hillview Ave
Palo Alto, CA 94304 United States

Page 1 of 2

**Certification**

**Name:** Amanda Swaim
**Date:** February 03, 2025