Kelsey Harclerode (SBN 313976)
kelsey@zwillgen.com
Adya Baker (admitted *pro hac vice*)
adya@zwillgen.com
**ZWILLGEN PLLC**
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298

Attorneys for Defendants
**ALLSTATE INSURANCE COMPANY and**
**STANCORP FINANCIAL GROUP, INC.**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CA, INC. d/b/a CA TECHNOLOGIES (A BROADCOM COMPANY), <br><br> *Plaintiff,* <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY and STANCORP FINANCIAL GROUP, INC. <br><br> *Defendants.* | Case No. 3:25-cv-03862-CRB <br> Judge: Hon. Charles R. Breyer <br><br> **DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO AMENDED COMPLAINT** |

Defendant ALLSTATE INSURANCE COMPANY ("Allstate"), by and through its undersigned counsel, hereby answers each of the numbered paragraphs of the Amended Complaint ("FAC") filed by Plaintiff. Defendant denies all of the FAC's allegations unless expressly admitted herein. All headings and subheadings contained herein correspond with the headings and subheadings used in the FAC and are included for organizational purposes only. Defendant denies all factual allegations included in headings and/or subheadings of the FAC. Defendant answers the allegations in the like-numbered paragraphs of the FAC as follows:

### NATURE OF THE ACTION

1. Defendant admits that Plaintiff purports to bring this action alleging copyright infringement, vicarious copyright infringement, contributory copyright infringement, breach of contract, and for declaratory judgment. Except as expressly admitted, Defendant denies each and every remaining allegation in Paragraph 1 of the FAC.

2. Paragraph 2 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 2 of the FAC.

3. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the FAC and refers the Court to the documents cited therein, which speak for themselves.

### PARTIES

4. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the FAC and on that basis denies those allegations.

5. Defendant admits that Allstate is an Illinois corporation with its principal place of business in Northbrook, Illinois.

6. Defendant admits that StanCorp is an Oregon corporation with its principal place of business in Oregon.

### JURISDICTION AND VENUE

7. Paragraph 7 of the FAC contains legal conclusions to which no response is required.

8.     Paragraph 8 of the FAC contains legal conclusions to which no response is required.

9.     Paragraph 9 of the FAC contains legal conclusions to which no response is required.

10.     Paragraph 10 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 10 of the FAC.

11.     Paragraph 11 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 11 of the FAC.

12.     Paragraph 12 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 12 of the FAC.

## GENERAL ALLEGATIONS

13.     Defendant admits that Plaintiff purports to bring this action for copyright infringement, contributory copyright infringement, vicarious copyright infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. Defendant denies that Defendant engaged in unauthorized reproduction and distribution of CA's copyrighted software and each and every remaining allegation in Paragraph 13 of the FAC.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the FAC and on that basis denies those allegations.

15.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the FAC and on that basis denies those allegations.

16.     Defendant admits that the licensing agreement between CA and Allstate that is the subject of this action contains a confidentiality clause.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16 of the FAC and on that basis denies those allegations.

17.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the FAC and on that basis denies those allegations.

18.     Defendant admits that workload automation tools can be provided through software that executes tasks without human intervention.  Defendant lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 of the FAC and on that basis denies those allegations.

19.    Defendant admit that the ESP Workload Automation 12.0 software is designed to perform workload automation functions.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19 of the FAC and on that basis denies those allegations.

20.    Defendant admits CA XCOM™ Data Transport® for z/OS MIPS, version 12.0 ("XCOM Data Transport for z/OS 12.0") is software used for file transfers.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20 of the FAC and on that basis denies those allegations.

21.    Defendant admits that the 2021 Order Form is a software license agreement, the terms of which speaks for themselves.  The remainder of the allegations in Paragraph 21 of the FAC state legal conclusions to which no response is required.

22.    Admitted.

23.    Defendant admits that Allstate sent a letter to Symantec notifying Symantec of Allstate's planned divestiture of its Employer Voluntary Benefits ("EVB") business to StanCorp. Defendant admits that Allstate did not send a similar notice letter addressed to CA.  Except as expressly admitted, Defendant denies each and every remaining allegation in Paragraph 23 of the FAC.

24.    Defendant admits that it sent a February 25 letter to Symantec, which speaks for itself.  Except as expressly admitted Defendant denies the remainder of the allegations and characterizations in Paragraph 24 of the FAC.

25.    Defendant admits that CA communicated its beliefs to Allstate as described in Paragraph 25 of the FAC but denies that Allstate did not have the rights to use Plaintiff's products and services as described in the February 25 notice.

26.    Paragraph 26 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 26 of the FAC.

27.    Defendant admits that CA asked for such a list.  Except as expressly admitted Defendant denies the remainder of the allegations and characterizations in Paragraph 27 of the FAC.

28.    Denied.

29.    Defendant denies that Allstate had no rights for Divestiture Use, and admits that divestiture closed on or around April 1, 2025.  Paragraph 29 contains legal conclusions to which no response is required.  Except as expressly admitted, Defendant lacks knowledge or information the remaining allegations contained in Paragraph 29 of the FAC and on that basis denies those allegations.

30.    Defendant admits that CA sent a letter on April 10, 2025, which speaks for itself. To the extent a response is otherwise required, Defendant denies the allegations contained in Paragraph 30 of the FAC.

31.    Defendant admits that outside counsel for CA sent a letter to Allstate, which speaks for itself, and denies the remaining allegations contained in Paragraph 31 of the FAC.

32.    Paragraph 32 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 32 of the FAC.

33.    Paragraph 33 purports to quote or paraphrase portions of the CA Master Agreement, which speaks for itself.  The remainder of Paragraph 33 of the FAC contains legal conclusions to which no response is required.  Defendant denies all remaining allegations in Paragraph 33 of the FAC.

34.    Paragraph 34 of the FAC contains legal conclusions to which no response is required.  Defendant denies all remaining allegations in Paragraph 34 of the FAC.

35.    Defendant admits that StanCorp is not a majority-owned subsidiary of Allstate. The remainder of Paragraph 35 of the FAC states a legal conclusion to which no response is required.

36.    Paragraph 36 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 36 of the FAC.

37. Paragraph 37 purports to quote or paraphrase portions of the CA Master Agreement, which speaks for itself.  Defendant denies all remaining allegations in Paragraph 37 of the FAC.

38. Paragraph 38 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 38 of the FAC.

39. Paragraph 39 purports to quote or paraphrase portions of the 2021 Order Form, which speaks for itself.

40. Defendant admits that CA issued a compliance verification notice, which speaks for itself.  Defendant otherwise denies the remaining characterization and allegations contained in Paragraph 40 of the FAC

41. Denied.

42. Denied.

43. Denied.

44. Defendant admits that the Complaint purports to state claims based on the Copyright Act and Agreements between Allstate and CA.

45. Denied.

**COUNT 1**
**Direct Copyright Infringement**
**(Against Allstate)**

46. Defendant incorporates its responses to Paragraphs 1–46 as if fully set forth herein.

47. Defendant admits that CA is listed as the registered owner for the copyright registrations attached in Schedule A to the Complaint, which speak for themselves.

48. Paragraph 48 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 48 of the FAC.

49. Paragraph 49 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 49 of the FAC.

50. Defendant admits that Allstate divested its EVB business to StanCorp.  Except as expressly admitted, Defendant denies each and every remaining allegation and characterization in Paragraph 50.

51. Denied.

52. Denied.

53. Paragraph 53 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 53 of the FAC.

54. Paragraph 54 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 54 of the FAC.

55. Denied.

56. Defendant admits that CA requests recovery of its costs and attorneys' fees but denies that recovery of such costs and fees is warranted.

**COUNT II**
**Contributory Copyright Infringement**
**(Against StanCorp)**

57. Defendant incorporates its responses to Paragraphs 1–57 as if fully set forth herein.

58. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant admits the allegation in Paragraph 58 of the FAC.

59. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant denies the allegations.

60. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant denies the allegations.

61. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant denies the allegations.

62. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant denies the allegations.

63. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant denies the allegations.

64. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant denies the allegations.

65. Count II is not directed to Defendant Allstate. To the extent an answer is nonetheless required, Defendant denies the allegations.

66.    Count II is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

67.    Count II is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

## COUNT III
**Vicarious Copyright Infringement**
**(Against StanCorp)**

68.    Defendant incorporates its responses to Paragraphs 1–67 as if fully set forth herein.

69.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant admits the allegation in Paragraph 69 of the FAC.

70.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

71.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

72.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

73.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

74.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

75.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

76.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

77.    Count III is not directed to Defendant Allstate.  To the extent an answer is nonetheless required, Defendant denies the allegations.

## COUNT IV
**Breach of Contract**
**(Against Allstate)**

78.    Defendant incorporates its responses to Paragraphs 1–77 as if fully set forth herein.

7

79.     Defendant admits that the 2021 Order Form is a software license agreement, the terms of which speaks for themselves. The remainder of the allegations in Paragraph 79 of the FAC state legal conclusions to which no response is required.

80.     Defendant admits that Allstate sent a letter to Symantec notifying Symantec of Allstate's planned divestiture of its Employer Voluntary Benefits ("EVB") business to StanCorp. Defendant admits that Allstate did not send a similar notice letter addressed to CA. Except as expressly admitted, Defendant denies each and every remaining allegation in Paragraph 80 of the FAC.

81.     Defendant admits that it sent a February 25 letter to Symantec, which speaks for itself.  Except as expressly admitted Defendant denies the remainder of the allegations and characterizations in Paragraph 81 of the FAC.

82.     Defendant admits that CA communicated to Allstate as described in Paragraph 82 of the FAC but denies that Allstate did not have the rights to use Plaintiff's products and services as described in the February 25 notice.

83.     Denied.

84.     Paragraph 84 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 84 of the FAC .

85.     Paragraph 85 purports to quote or paraphrase portions of the CA Master Agreement, which speaks for itself.

86.     Paragraph 86 purports to paraphrase portions of the CA Master Agreement, which speaks for itself. Defendant admits that the CA Master Agreement contains confidentiality provisions restricting the disclosure of CA software to certain third parties.  Defendant denies the allegations in Paragraph 86 to the extent they could be construed to allege that no third parties could receive confidential information under the Agreements.

87.     Paragraph 87 purports to paraphrase portions of the CA Master Agreement, which speaks for itself. Defendant admits that the CA Master Agreement contains confidentiality provisions restricting the disclosure of CA software to certain third parties.  Defendant denies the

allegations in Paragraph 87 to the extent they could be construed to allege that no third parties could receive confidential information under the Agreements.

88.    Denied.

89.    Denied.

90.    Denied.

91.    Denied.

## COUNT V
### Breach of Contract (Failure to Permit Audit and Provide Records)
### (Against Allstate)

92.    Defendant incorporates its responses to Paragraphs 1–91 as if fully set forth herein.

93.    Defendant admits that the 2021 Order Form is a software license agreement, the terms of which speaks for themselves. The remainder of the allegations in Paragraph 93 of the FAC state legal conclusions to which no response is required.

94.    Paragraph 94 purports to quote or paraphrase portions of the 2021 Order Form, which speaks for itself. The remainder of the allegations in Paragraph 94 of the FAC state legal conclusions to which no response is required.

95.    Paragraph 95 of the FAC states a legal conclusion to which no response is required. To the extent a response is required, Defendant admits the allegations in Paragraph 95.

96.    Defendant admits that CA issued a compliance verification notice, which speaks for itself.  Defendant otherwise denies the remaining characterization and allegations contained in Paragraph 96 of the FAC

97.    Denied.

98.    Denied.

99.    Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 104 of the FAC and on that basis denies those allegations.

105. Denied.

106. Defendant admits that CA seeks relief as described in Paragraph 106 but denies that such relief is warranted.

107. Defendant admits that CA seeks injunctive relief as described in Paragraph 107 of the FAC but denies that such relief is warranted.

## COUNT VI
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Allstate)

108. Defendant incorporates its responses to Paragraphs 1–107 as if fully set forth herein.

109. Paragraph 109 purports to quote or paraphrase portions of the 2021 Order Form, which speaks for itself. The remainder of the allegations in Paragraph 109 of the FAC state legal conclusions to which no response is required.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Defendant admits that CA seeks relief as described in Paragraph 114 but denies that such relief is warranted.

115. Defendant admits that CA seeks injunctive relief as described in Paragraph 115 of the FAC but denies that such relief is warranted.

## COUNT VII
### Declaratory Judgment
### 28 U.S.C. § 2201
### (Against Allstate)

116. Defendant incorporates its responses to Paragraphs 1–115 as if fully set forth herein.

117. Paragraph 117 of the FAC states a legal conclusion to which no response is required. Defendant denies all remaining allegations in Paragraph 117 of the FAC.

118. Paragraph 118 purports to quote or paraphrase portions of the 2021 Order Form, which speaks for itself. The remainder of the allegations in Paragraph 118 of the FAC state legal conclusions to which no response is required.

119. Defendant admits that Allstate sent a letter to Symantec notifying Symantec of Allstate's planned divestiture of its Employer Voluntary Benefits ("EVB") business to StanCorp. Defendant admits that Allstate did not send a similar notice letter addressed to CA. Except as expressly admitted, Defendant denies each and every remaining allegation in Paragraph 119 of the FAC.

120. Defendant admits that CA expressed to Allstate that such Divestiture Use was not permitted by the Agreements but denies that such Divestiture Use was not permitted by the Agreements.

121. Defendant denies that it has engaged in any Divestiture Use in violation of the Agreements. Defendant admits that it sent a letter to CA's outside counsel, the contents of which speaks for themselves.

122. Denied.

123. Defendant admits that CA seeks a declaratory judgment as described in Paragraph 123 but denies that such relief is warranted.

124. Defendant admits that CA seeks a declaratory judgment as described in Paragraph 124 but denies that such relief is warranted.

125. Defendant admits that CA seeks a declaratory judgment as described in Paragraph 125 but denies that such relief is warranted.

126. Paragraph 126 of the FAC contains legal conclusions to which no response is required. Defendant denies all remaining allegations in Paragraph 126 of the FAC.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof that it would otherwise bear, Defendant asserts the following separate and additional defenses, all of which are pleaded in the alternative, and none of

11

which constitute an admission that Defendant is in any way liable to CA, that CA has been or will be injured or damaged in any way, or that CA is entitled to any relief whatsoever.  Defendant reserves the right to amend or supplement its affirmative defenses and raise counterclaims as additional facts concerning its defenses become known to Defendant.  As a defense to CA's claims and each and every allegation contained herein, Defendant alleges the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

The complaint fails to state facts sufficient to constitute any cause of action against this answering Defendant.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff granted Defendant an express license to use the copyrighted material at issue in this action and that Defendant used the copyrighted material in a manner consistent with that license. Accordingly, any use of the work by Defendant was authorized and lawful and therefore cannot constitute copyright infringement. Plaintiff's claims are barred, in whole or in part, by virtue of this express license.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Allstate and StanCorp each had implied licenses to use to copyrighted material at issue in this action and used the material in a manner consistent with such implied licenses.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the terms of any applicable agreements between Defendant and Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Allstate and StanCorp's conduct was innocent, non-infringing, and not a willful infringement of copyright.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is estopped by Plaintiff's own course of conduct from pursuing each and every cause of action asserted in the complaint.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part by reason of the doctrine of election of remedies.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part because by reason of the doctrine of unclean hands.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred in whole or in part because the FAC, and each purported claim contained therein, was brought without reasonable cause and without a good faith belief that there was a justifiable controversy under the facts and the law to warrant the filing of said complaint against this answering Defendant; that Plaintiff is therefore responsible for all necessary and reasonable costs, including attorney's fees, incurred by this answering defendant.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for damages cannot be sustained because it did not suffer any damage.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff is barred from obtaining any recovery on the allegations in the Complaint because Defendant has abided by and complied with all applicable laws, regulations and statutes.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiff is barred from recovering the relief sought because Plaintiff would be unjustly enriched if permitted to obtain recovery in this action because such recovery would be disproportionate to the harm, if any, suffered by Plaintiff.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiff is barred from recovering the damages sought because recovering such damages would violate Defendant's due process rights under the United States Constitution.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiff is barred from recovering the damages sought because it has failed to mitigate damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff has engaged in one or more acts that have misused their copyrights including but not limited to having wrongfully attempted to extend the scope of the limited monopoly granted by the Copyright Act.

## COUNTERCLAIMS

Cross-complainant Allstate alleges as follows:

## FACTUAL ALLEGATIONS

1.     CA, Inc. does business as Broadcom, Inc.  As referred to herein, these terms are used interchangeably.

2.     Through Order Form #00333778.0 dated November 20, 2021 (the "2021 Order Form") and the CA Software License Agreement dated August 1, 1994, #396687, as amended May 1, 1995 ("CA Master agreement"), CA agreed to license certain software to Allstate, including but not limited to ESP Workload Automation 12.0 and XCOM Data Transport for z/OS 12.0.

3.     The 2021 Order Form governs CA's authority to conduct an audit "to verify compliance" with the 2021 Order Form and CA Master agreement.

4.     The 2021 Order Form states as follows:

> **CA Audit**. To verify compliance with this Order Form and the Governing Contract, CA will engage an independent auditor, which will be subject to a confidentiality obligation.  Verification will take place upon not fewer than sixty (60) days' notice, during normal business hours and in a manner that does not interfere unreasonably with Customer's operations and subject to Customer's audit policies.  Such audit shall take place no more than every twenty-four (24) month period during Term of this Order Form.

5.     On or before April 10, 2025, CA began notifying Allstate that it would begin a "Broadcom Software Licensing Review" involving at least four independent "workstreams."

6.     On or about April 10, 2025 representatives from Allstate and Broadcom participated in a "Broadcom License Verification Kickoff" conference call during which Broadcom indicated that it intended to conduct license verification related to four different categories of software.

14

7. The audit would encompass the following categories of software: "Tanzu," "VMWare," "Agile Operations" and "Mainframe." Each software category would have its own audit workstream.

8. Broadcom dedicated multi-person teams to conduct each of the four audit workstreams. Two teams (VMWare and Agile Operations) included third party consulting firms. The Tanzu and Mainframe teams were made up of Broadcom employees only, with no independent auditor.

9. Each of these teams independently demanded disparate data from Allstate on unreasonably short timelines, without regard to the Allstate's employees' pre-existing workloads or responsibilities, without regard to Allstate's capacity restraints, and without regard to their unreasonable interference with Allstate's operations.

10. Because of Broadcom's disregard for Allstate's operations, Allstate employees had to work outside of business hours to accommodate the demands coming from four independent teams of auditors.

11. On or around April 29, 2025, CA notified Allstate of its intent to verify compliance with the 2021 Order Form and CA Master Agreement.

12. Per the terms of the 2021 Order Form, CA's verification should have taken place *no earlier* than June 20, 2025, sixty days after notification.

13. Instead of providing 60 days' notice as required by the 2021 Order Form, CA immediately demanded compliance with its numerous requests for data and information, with deadlines beginning as early as May 5, 2025 and a target completion date of June 2, 2025.

14. Allstate employees coordinated "kickoff" calls for each of the four audit workstreams.

15. Prior to each of the four kickoff calls, Allstate employees requested that Broadcom provide a list of all "data and information requirements associated with each workstream" so that it could ensure that the appropriate Allstate employees could join the kickoff calls.

16. Broadcom did not provide a list of all "data and information requirements associated with each workstream."

15

17.    On information and belief, the CA XCOM Data Transport for z/OS MIPS, version 12.0 ("XCOM Data Transport for z/OS 12.0") is associated with the Agile Operations workstream.

18.    For the "Agile Operations" workstream, Allstate employees specifically requested a "list of titles that are in scope of this workstream." Broadcom informed Allstate that the Agile Operations workstream would include "the DX NetOps suite and Workload Automation Agent EE (Enterprise Edition Agent for Automic Workload Automation)." Broadcom further informed CA that "Joe from Deloitte" would provide next steps.

19.    During the Agile Operations kickoff call, led by Mitchell Bilodeau of Deloitte & Touche LLP, Allstate requested further clarification of the included software, as Allstate did not have a contract for any product of the name provided.  Bilodeau advised that he would seek clarification from Broadcom.

20.    Bilodeau and Broadcom did not wait 60 days following notice of the Agile Operations audit as required by the 2021 Order Form for verification and instead began demanding documents immediately.

21.    On May 1, 2025, Allstate followed up by again asking Bilodeau to clarify the scope of the Agile Operations workstream.  Bilodeau responded that day with a list of product keywords and file paths, but informed Allstate that it still had not heard from Broadcom regarding the "Automic Automation Intelligence vs. Workload Automation EE" question.

22.    On May 3, 2025, Broadcom filed a lawsuit alleging that Allstate was infringing Broadcom's copyright and in breach of contract with respect to ESP Workload Automation 12.0 software.

23.    On information and belief, the ESP Workload Automation 12.0 software referenced in the Complaint and FAC is among the software subject to Broadcom's Agile Operations audit workstream.  Despite initiating litigation centered on Allstate's use of software that was the subject of the audit, Broadcom continued to demand data and information directly from Allstate employees.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT;
CASE NO. 3:25-CV-03862-CRB

24.   On May 5, 2025, Bilodeau informed Allstate that Broadcom had defined Automic Automation Intelligence (AAI) and Workload Automation EE as follows:

*AAI works with a variety of schedulers in the Broadcom portfolio, including Workload Automation EE, commonly called by its legacy name, ESP. Automic Automation Intelligence is a legacy name for what is now known as Automation Analytics and Intelligence -- both are referred to as AAI, but depending on when it was added you might discover it referred to under an older name. JAWS is another example of a Legacy name from the prior owner of the product, Terma Labs.*

25.   That same day, Allstate responded to Bilodeau, informing him that Allstate has no "automic automation intelligence" or "JAWS" product named in any contract, that "ESP" is too vague, and that the keyword list did not align with the agile operations product titles in Allstate's contracts. Allstate informed Bilodeau that keywords needed to align to the products in the contracts.

26.   On May 7, 2025, Bilodeau thanked Allstate for the "detailed response" and informed Allstate that he "understand[s] the confusion" because Broadcom product names evolved over the years. Bilodeau informed Allstate that he would relay Allstate's need for time to conduct proper diligence to Broadcom, "so they are up to speed on progress/milestone completion."

27.   On information and belief, neither Bilodeau nor Broadcom identified the name of its products in the manner those products were identified in the 2021 Order Form.

28.   On May 15, 2025, Allstate informed Bilodeau that it was continuing internal discussions and would provide an update when one was available.

29.   On May 21, 2025, Broadcom employee Atif Kazmi informed Allstate that Broadcom "appreciate[s] your communication and understand[s] that you are still gathering information." Kazmi requested a "tentative timeframe" to "help us better plan our audit timeline."

30.   Allstate continued to work in good faith on gathering the data and information demanded by Broadcom with respect to the Agile Operations workstream.

31.   On information and belief, the ESP Workload Automation 12.0 software and XCOM Data Transport for z/OS 12.0 software are also associated with the Mainframe audit workstream.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT;
CASE NO. 3:25-CV-03862-CRB

32. With regard to the Mainframe workstream, in April 2025 Broadcom employee Joseph Ekstrom informed Allstate that he and Broadcom employee Rae Ann Taylor would conduct the audit for the Mainframe workstream. CA did not engage an independent auditor to conduct the audit of the Mainframe workstream in violation of the 2021 Order Form.

33. Allstate organized a kickoff call for the Mainframe workstream on April 29, 2025. During that call, Ekstrom provided a list of the Mainframe CA software to be audited. The list included "CA XCOM Data Transport for z/OS MIPS" (XCOM for z/OS MIPS). The list identified at least six additional "CA XCOM Data Transport" products, and at least eighteen other CA products. All of the software identified during the kickoff call is governed by the 2021 Order Form and CA Master Agreement.

34. On information and belief, XCOM for z/OP MIPS is the same software described as "CA XCOM Data Transport for z/OS MIPS, version 12.0" in the FAC.

35. Following the kickoff call on April 29, Ekstrom informed Allstate that he would work with Broadcom's product team to provide a "more detailed summary of what the XCOM queries would entail."

36. On May 6, 2025, Allstate informed Ekstrom that it was reviewing all the information demands and reminded Ekstrom that because four workstreams had kicked off at the same time, it would take time to work through the information demands.

37. Without regard to Allstate's stated capacity constraints, Ekstrom responded on May 6 by asking Allstate to send certain reports by "COB tomorrow," to set up a Zoom meeting between Allstate and Broadcom subject matter experts, to provide a list of Allstate subject matter experts, and to provide a timeframe for complying with demands made during the kickoff call.

38. The next day, Allstate requested that Ekstrom provide step by step instructions to gather the necessary data "associated with XCOM" so that it could compile the demanded data.

39. A week later, on May 13, Ekstrom confirmed receipt of the reports he had requested, and provided instructions for collecting the XCOM data. Allstate confirmed receipt.

40. Ekstrom continued to demand updates despite the ongoing litigation, initiated by Broadcom, concerning software at issue in the Mainframe audit. On May 30, Allstate reiterated to

18

Ekstrom that the Mainframe audit was associated with the lawsuit Broadcom brought against Allstate, and that counsel were discussing next steps.

41. Allstate continued to work in good faith on gathering the data and information demanded by Broadcom with respect to the Mainframe audit. Given the ongoing litigation initiated by Broadcom regarding software that was the subject of the Mainframe audit, Allstate did not share each detail of its progress with Broadcom's Mainframe audit team.

42. Nonetheless, and outside the presence of counsel, Ekstrom continued to demand Allstate's compliance with Broadcom's demands. On June 3, 2025, Ekstrom ordered that Allstate provide all of the information previously demanded by Broadcom – as well as answers to additional questions posed for the first time that same day – by June 10.

43. Meanwhile, in communications regarding the VMWare workstream, on the same day (June 3), Broadcom employee Anees Iqbal acknowledged that Allstate's active engagement on the audit had paused "due to legal discussions" but that Broadcom understood "that there is agreement now to proceed." Allstate responded in agreement and confirmed its engagement in the audit demands. Allstate informed Iqbal that, of the four workstreams, it had made the most progress on the Tanzu workstream and would prioritize VMware next.

44. On June 13, 2025, Iqbal instructed Allstate to de-prioritize the Tanzu and Agile Operations workstreams, and to expedite the Mainframe and VMware audits "immediately."

45. The same day, Allstate responded that it had already established the Tanzu and VMWare workstreams as first priority based on internal progress. Allstate advised that it was proceeding "simply as quickly as we can based on capacity" and reiterated that each workstream required specific resources.

46. Then, on June 25, a different Broadcom consultant (Harsh Advani) instructed Allstate to "prioritize the VMware workstream moving forward." Allstate immediately responded with an update on the status of the VMWare data collection.

47. On July 1, Advani thanked Allstate for the update and confirmed that he "understood the timeline" and Allstate's resources constraints.

48. To borrow a phrase, it thus came as quite a surprise when, on July 14, Broadcom filed the FAC, asserting new allegations based on the XCOM software and new claims that Allstate had, as of that date, somehow failed to comply with the audit.

49. Despite the lawsuit, and prior instructions to deprioritize the Agile Operations workstream, on July 16, 2025, Broadcom again demanded an update on the status of the Agile Operations workstream. Allstate responded that same day that Allstate's "finite resources" were focusing their efforts on the Tanzu and VMWare data collection efforts "based on capacity."

50. Nonetheless, on July 18, 2025, in complete disregard for Allstate's stated capacity restraints, Broadcom ordered Allstate to set a date by which it would provide all of the information Broadcom had demanded for all four workstreams.  Broadcom gave Allstate until July 22 to set the date.

51. On July 22, Allstate complied with Broadcom's demand by offering to provide information by August 15 and 29 for the Tanzu and VMWare workstreams, and by September 30 for the Agile Operations and Mainframe workstreams.  Broadcom refused to accept Allstate's proposed timeline.

52. To date, Allstate continues to work in good faith to collect and disclose the information demanded by Broadcom with respect to all four audit workstreams.

**Count I**
**(Breach of Contract)**

53. Allstate realleges and incorporates by reference all foregoing allegations of its Counterclaim as if fully set forth herein.

54. The 2021 Order Form and CA Master Agreement comprise the agreement between CA and Allstate with respect to the licensing of certain CA software, to include ESP Workload Automation 12.0 and XCOM Data Transport for z/OS 12.0.

55. Through the 2021 Order Form, CA contractually agreed to the following audit process:

> **CA Audit**. To verify compliance with this Order Form and the Governing Contract, CA will engage an independent auditor, which will be subject to a confidentiality obligation.  Verification will take place upon not fewer than

20

sixty (60) days' notice, during normal business hours and in a manner that does not interfere unreasonably with Customer's operations and subject to Customer's audit policies.  Such audit shall take place no more than every twenty-four (24) month period during Term of this Order Form.

56.    The CA Audit provision is a material term of the 2021 Order Form and CA Master agreement.

57.    In or around April 2025, CA provided notice of four audits, including a written demand on April 29, 2025 to verify Allstate's compliance with the 2021 Order Form and CA Master Agreement.  The audits to verify compliance with the 2021 Order Form and CA Master Agreement included (1) an audit of Agile Operations software, and (2) an audit of Mainframe software.  The other two audits, of Tanzu software and VMware software, were governed by other agreements.

58.    CA staffed each of the four audits with dedicated teams of CA employees and/or contractors.

59.    CA failed to engage an independent auditor to conduct the Agile Operations audit, in violation of the CA audit provision.

60.    CA's audit teams demanded that Allstate compile and provide information to verify compliance with the 2021 Order Form and CA Master agreement immediately.  CA did not provide sixty days' notice before verification, in violation of the CA Audit provision.

61.    Allstate repeatedly advised CA that complying with audit demands from four independent teams simultaneously would require significant resources and pose substantial challenges in light of Allstate employees' existing workloads and responsibilities.

62.    CA nonetheless demanded compliance with the four independent workstreams on unreasonably short timelines.

63.    The CA Audit Provision does not obligate Allstate to compile and provide information on timeframes unilaterally imposed by CA.

64.    Rather, the CA Audit Provision requires CA to conduct its verification during normal business hours and in a manner that does not interfere unreasonably with Allstate's operations.

21

65.    CA conducted its audits in a manner that unreasonably interfered with Allstate's operations.

66.    Shortly after demanding compliance with its four audits, on May 2, 2025 CA sued Allstate for allegedly breaching contracts and infringing the copyrights of the same software that was the subject of the Mainframe and Agile Operations audits.  CA's audit teams nonetheless continued to pepper Allstate with demands, outside the presence of counsel and despite the ongoing litigation.

67.    In the midst of peppering Allstate with unreasonable and inconsistent demands to provide information for CA's four simultaneous audits, and despite Allstate's repeated assurances that it was making progress as efficiently as it could in light of capacity constraints, CA amended its lawsuit to add copyright allegations regarding software that was the subject of the Agile Operations and Mainframe audits, and to add contract claims about Allstate's compliance with the audit.

68.    Despite the amended lawsuit, CA's audit teams nonetheless continued to pepper Allstate with demands, outside the presence of counsel and despite the ongoing litigation.

69.    Allstate worked in good faith to comply with CA's unreasonable audit demands despite the lack of notice and despite Allstate's capacity restraints.

70.    Allstate has performed its obligations under the 2021 Order Form.

71.    CA has breached the 2021 Order Form by not complying with the CA Audit provision.

72.    CA's failure to comply has unreasonably interfered with Allstate's operations. Allstate has incurred expenses in its efforts to comply with CA's audit demands.

73.    Allstate has suffered damages as a result of CA's failure to comply with the CA Audit provision in an amount to be determined at trial.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

74.    Allstate realleges and incorporates by references all foregoing allegations of is counterclaims as if fully set forth herein.

22

75. The 2021 Order Form and CA Master Agreement comprise the agreement between CA and Allstate with respect to the licensing of certain CA software, to include ESP Workload Automation 12.0 and XCOM Data Transport for z/OS 12.0.

76. Through the 2021 Order Form, CA contractually agreed to the following audit process:

> **CA Audit**. To verify compliance with this Order Form and the Governing Contract, CA will engage an independent auditor, which will be subject to a confidentiality obligation. Verification will take place upon not fewer than sixty (60) days' notice, during normal business hours and in a manner that does not interfere unreasonably with Customer's operations and subject to Customer's audit policies. Such audit shall take place no more than every twenty-four (24) month period during Term of this Order Form.

77. The CA Audit provision is a material term of the 2021 Order Form and CA Master agreement.

78. CA's conduct in implementing four audits simultaneously, failing to provide the requisite sixty days' notice, failing to engage an independent auditor on the Agile Operations audit, and failing to conduct its audits in a manner that does not unreasonably interfere with Allstate's operations constitutes a breach of the implied covenant of good faith and fair dealing inherent in every contract.

79. CA imposed unreasonable demands that Allstate compile and produce considerable data and information that was the subject of ongoing litigation initiated by CA. CA demanded production on unreasonably short timeframes that were not required by the CA Audit provision. CA's four independent audit teams provided inadequate and inconsistent information to Allstate. Further, CA made their demands outside the presence of counsel, and continued to make demands even as it amended its lawsuit to allege non-compliance with the audits. CA's conduct in this regard constitutes a breach of the implied covenant of good faith and fair dealing inherent in every contract.

80. CA's conduct has deprived Allstate of the safeguards of the CA Audit provision unreasonably and without cause, and unfairly interfered with and inhibited Allstate's efforts to perform its obligations.

81. Allstate has performed its obligations under the 2021 Order Form.

82. Allstate has suffered damages as a proximate result of CA's breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil. Procedure, Allstate demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Defendants request that the Court dismiss Plaintiff's claims, enter judgment in Defendants' favor and against Plaintiff on its First Amended Complaint, enter judgment in Defendant's favor on its counter-claims, and such other relief as this Court deems just and proper, including:

A. Dismissal of Plaintiff's claims with prejudice;

B. Denial of all relief requested by Plaintiff;

C. Damages to be determined at trial;

D. Reasonable attorneys' fees and costs; and

E. All other relief to which Defendants might be entitled at law or equity.

DATED: August 18, 2025                    **ZWILLGEN PLLC**

By: _/s/ Adya Baker_
     Adya Baker (*pro hac vice*)
     adya@zwillgen.com

**Attorney for Defendants**
Allstate Insurance Company and
StanCorp Financial Group, Inc.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT;
CASE NO. 3:25-CV-03862-CRB